G. ARTHUR BOLTE et al., partners practicing law under the firm name of BOLTE, MILLER & REPETTO, complainants-respondents,

*v.*

MARIA G. RAINVILLE and HENRY G. RAINVILLE, defendants-appellants.

[Argued October 23d, 1945; reargued May 27th, 1946. Decided June 28th, 1946.]

510

[redacted]

*Messrs. Kirkman, Mulligan & Harris (Mr. Eugene N. Harris,* of counsel), for the appellants.

*Mr. William Elmer Brown, Jr.,* for the respondents.

The opinion of the court was delivered by

HEHER, J.

Complainants sued defendants severally at law for the value of services rendered by them as attorneys and counsellors-at-law and incidental disbursements. Defendants answered separately admitting their liability for the reasonable value of the services and averring payments, "under protest," in excess of such value. They each counter-claimed for the excess payments so alleged. On complainants' motion, the law court struck out the counter-claims on the ground that they did not "sufficiently plead facts showing mistake, fraud or duress," with leave to amend. The counter-claims were each amended to declare that certain specified "incorrect advice" given by the complainant attorneys "greatly frightened and unnerved" the counter-claimant and "created such a state of mind that the free agency of the counter-claimant in dealing with" complainants "in regard to fees was destroyed;" and that the payments for such services were made "under protest and under circumstances," therein set down, "which * * * amounted to moral coercion." Thereupon, the bill herein was filed. It prays that Chancery "investigate and review all of the dealings and transactions had between" complainants and

defendants, "and determine the adequacy, fairness and reasonableness of the fees and charges" thus demanded, and that prosecution of the action at law be restrained. The order under review restrains the prosecution of the law action. It embodies findings that "the matters and things complained of are not cognizable at law," and that complainants "are entitled to have their dealings and transactions with defendants reviewed and the adequacy, reasonableness and fairness of the fees and charges made by them passed upon and determined" by Chancery.

Thus, the intervention of equity is sought, not by a defendant in an action at law who would interpose defenses and enforce a cause of action cognizable in equity only, but by the plaintiff therein on the ground that the subject-matter of the counter-claims is purely equitable in nature.

The gravamen of the bill of complaint is that the fees charged by complainants for legal services are "in all respects reasonable, fair and just;" that the defendants each agreed to pay the fee set, and made several payments on account thereof; that the counter-claims do not contain "any charge of actual or intentional fraud or duress imposed upon the defendants by these complainants" and, "under the pleadings filed" in the law court, complainants "cannot secure or have a full, complete and final hearing and determination of the dealings and transactions had between complainants and defendants, and of the adequacy, fairness and reasonableness of the fees and charges" so claimed; and that only in equity can there be had "a comprehensive and dispositive adjudication of the rights and remedies" of the parties.

The learned Vice-Chancellor read the counter-claims as not charging "actual or intentional fraud or duress." Referring to the payments made by the counter-claimants on account of the fees charged, he invoked the rule that moneys voluntarily paid with a full knowledge of all the facts, and without fraud, duress or coercion, on a demand not legally enforceable, are not recoverable; and this he conceived to be a ground for the intervention of equity. See, *e. g., Eaton* v. *Eaton, 35 N. J. Law 290; Camden* v. *Green, 54 N. J. Law 591; Koewing* v. *West Orange, 89 N. J. Law 539; Miller* v. *Eisele, 111 N. J.*

*Law 268; Magna Manufacturing Co., Inc.,* v. *Aetna Casualty and Surety Co., 129 N. J. Eq. 142.* But this is a principle of substantive law which likewise prevails in equity. Indeed, the right to a recovery for mistake, fraud or duress is enforceable by the common-law action of *indebitatus assumpsit* for money, had and received—a remedy of ancient equitable origin and nature, due to the lack of a remedy at law, and therefore governed by equitable principles. *48 C. J. 769.* The equitable *assumpsit* is available only where the plaintiff has "equity and conscience" on his side. *Capraro* v. *Propati, 127 N. J. Eq. 419; Hartford Accident and Indemnity Co.* v. *Benevento, 133 N. J. Law 315.*

It is obviously not grounds for equitable interposition that the question whether, to quote the Vice-Chancellor, "a fair and reasonable fee for the services rendered by the attorneys is less than the sum already paid them has not been properly raised in the law court;" that, by the filing of the counterclaims, defendants "indicated a desire to have the conduct of the complainants reviewed and the adequacy, fairness and reasonableness of their charges determined;" and that only by the bill of complaint herein can *defendants* "have their rights and remedies fully and completely determined."

It is elemental that in such circumstances equitable processes are available only to the party who cannot have a full measure of relief at law, not to the beneficiary of the jurisdictional limitations of the law courts. By the same token, the latter has in this regard a full and complete remedy at law for the enforcement of his asserted right. It is within his power to exclude from the consideration of the law court matters cognizable only in equity. The lack of an adequate remedy at law is the basis of the appeal to equitable jurisdiction in such cases. Equity rectifies the invasion of existing primary rights not so cognizable or adequately redressable at law; and thus it is that, in all such instances, only the party who cannot obtain a sufficient remedy at law may enlist the aid of equity. The vindication of the defendant's equitable rights is not the plaintiff's concern; this does not justify the transference of the cause to equity at the plaintiff's instance. This course has no precedent to sustain it; and it is inde-

fensible in principle. In every case cited on the point by the Vice-Chancellor, it was the client who besought equitable intervention.

But, quite apart from the foregoing, equity jurisdiction here was also definitely and unequivocally rested upon the circumstances that the counter-claimants in the law action have therein "seen fit to make a permanent record of allegations and innuendoes challenging the integrity of the complainants in their professional dealings with them;" and that in the law court the verdict of a jury, "even though it be in favor of a plaintiff, may not always afford a litigant that complete vindication of his conduct to which he may, in conscience, be entitled—it could still be said that by some technicality of the law a plaintiff obtained a money judgment, leaving unresolved a defendant's accusations against an attorney that could be utterly destructive and ruinous to his reputation," and the Chancellor "can specifically and fully guard against such a situation."

There is no such field of equity jurisdiction. If there were, actions *ex contractu* for breach of the contract giving rise to the relationship of attorney and client, and in case for negligence and malpractice, would all, without more, be remediable in equity; and such jurisdiction concededly is non-existent. Here, the action at law is to recover the reasonable value of the services rendered by the attorneys on a *quantum meruit,* and also the amount due on what would seem to be an account stated, *i. e.,* an account rendered and an unconditional promise of payment; and the counter-claims demand the return of the moneys paid in excess of the reasonable value of the services. While the subject-matter does not involve fees for advocacy, an express contract to pay a specific sum for such services is no longer a condition prerequisite to recovery. *R. S. 2:20–8. Vide, LeDuc* v. *Williams, 7 N. J. Mis. R. 342; affirmed, 106 N. J. Law 247; Voorhees* v. *Barr, 59 N. J. Law 124; Bentley* v. *Fidelity and Deposit Co., 75 N. J. Law 828; Schomp* v. *Schenck, 40 N. J. Law 195.* Being an action *ex contractu* to enforce an obligation arising from the rendition of the services, and a promise to pay, express or implied, the usual rule applies that recourse to equity may be had only

where the legal remedy is inadequate. Such is the general rule. *5 Am. Jur. 369, 370; 7 C. J. S. 1100, 1102, 1103.* Equity may enforce an attorney's lien; and it may in certain circumstances determine the *quantum* of the attorney's compensation in the exercise of a summary jurisdiction arising from the attorney's dishonest, oppressive or clearly illegal conduct. *Strong & Sons v. Mundy, 52 N. J. Eq. 833; Lynde v. Lynde, 64 N. J. Eq. 736.* Equity may also inquire into the fairness and reasonableness of a contract for professional services between an attorney and client entered into while the fiduciary relation or its influence subsists. But this superintendency is exerted to secure the client against the attorney's use of the confidential relationship to reap an unfair advantage. In such circumstances, the attorney has the burden of establishing the fairness of the stipulated compensation. *Brown v. Bulkley, 14 N. J. Eq. 451; Schomp v. Schenck, supra; Kelley v. Schwinghammer, 78 N. J. Eq. 437.* The power of equity to revise or cancel a contract for professional services between an attorney and client is designed to protect the client from the undue influence of his attorney, and is confined accordingly. The law courts are no less able than equity to protect an attorney from injustice in an action for fees and disbursements in circumstances such as these.

*Section 2:20–8, supra,* was not designed to invest courts of equity with jurisdiction in cases where there is an adequate remedy at law. It permits the recovery of "reasonable fees" for advocacy as well as for services rendered by a solicitor or attorney, provided that a copy of the bill for fees be first delivered to the client or his legal representative. It is fundamental that where the primary right to be protected or redressed is legal, and full and complete justice can be had in a court of law, both as respects the relief granted and the modes of procedure by which such relief is conferred, equity will not interfere even with the remedies peculiar to it, much less those administered both by it and by the law in the exercise of a concurrent jurisdiction. *Pridmore v. Steneck, 122 N. J. Eq. 35; Pom. Eq. Jur. (5th ed.), §§ 139, 173, 176, 178, 217.* As to purely equitable rights, interests and remedies, see *Ibid.,* §§ 218, 219, 220, 222.

Equity takes cognizance of contracts between attorney and client under the head of constructive fraud, a term applied to a variety of transactions regarded as wrongful and subject to the same or similar consequences and remedies as in cases of actual fraud. *Brown* v. *Bulkley, supra; Pom. Eq. Jur.* (*5th ed.*), §§ *922, 943, et seq.* This doctrine conditions and limits the extent of the equity jurisdiction. Dealings between attorney and client are grouped with the cases in which fraud is presumed from the circumstances and condition of the immediate parties to the transaction. There are but two other classes of constructive fraud: (a) That apparent from the intrinsic nature and subject of the bargain itself; and (b) That which is an imposition on third persons not parties to the transaction. This generally accepted classification derives from the opinion of Lord Hardwicke in the leading English case of *Chesterfield* v. *Janssen, 2 Ves. Sr. 125; 28 Eng. Reprint 82; 1 Atk. 301.* A transaction between an attorney and his client, though regular in its external form, is impeachable for lack of the "absolute consent" deemed essential in equity, due to the position of superiority which the attorney occupies over his client. Because of this dominance of the one party over the other, equity raises a presumption against the validity of the transaction, and casts upon the dominant party the burden of proving affirmatively his compliance with equitable requisites and thereby overcoming the presumption of invalidity. *Pom. Eq. Jur.* (*5th ed.*), §§ *943, 955, 956, 960, 960d.* It is a corollary of this proposition that such equitable power, confined as it is within certain and definite limits, is invocable only by the client against whom enforcement of the stipulation is sought. The issue is one of fundamentals. The view accepted below does violence to jurisprudence. *R. S. 2:29–9* does not serve to enlarge the basic jurisdiction of equity. Chancery is not thereby clothed with power to adjudicate purely legal primary rights, subject to the right of trial by jury, if claimed, but rather is directed, if demand therefor be made, to award a jury trial of "any question, ordinarily determinable at law and requiring a jury trial," which shall arise in a suit of which Chancery has jurisdiction. For Chancery's view of the essential quality

of this provision, see *Commonwealth Quarry Co.* v. *Gougherly, 105 N. J. Eq. 642; Lake Lenore, Inc.,* v. *Delaware, Lackawanna and Western Railroad Co., 113 N. J. Eq. 533; Fidelity Union Trust Co.* v. *Cochrane, 116 N. J. Eq. 190.* As this court said in *Goerke Kirch Co.* v. *Goerke Kirch Holding Co., 118 N. J. Eq. 1,* the sphere of equity jurisprudence is not like unto an uncharted sea, with no compass to guide save the conscience of the Chancellor, unrestrained by principle, precept or rule. Equity is not an indefinable area of refuge for the suitor who may not have a liking for the processes of the law courts. Its jurisdiction is grounded in and limited by well-established principles. If that were not so, equity would be variable both in content and in quality and there could not be the certainty or fixity of right and remedy characteristic of the English system of equity which is our heritage— equity and justice rooted in settled principles, tested by experience, and not subject to the arbitrary will of the Chancellor in whom for the time being equitable power is reposed.

Neither *Lane* v. *Rushmore, 123 N. J. Eq. 531; affirmed, 125 N. J. Eq. 310,* nor *Koehler* v. *Saltzman, 125 N. J. Eq. 97,* is a case in point. In the former, the asserted equitable jurisdiction was sustained by this court on the ground that the suit at law was vexatious and the remedy at law was inadequate. The doctrine of *res judicata* was invoked. It was held that "If, after decree in equity, a party shall proceed at law for the same matter, equity will restrain him by injunction," for in such circumstances the action at law "is gross oppression to vex another with a double suit for the same cause of action," and "is treated as contempt of court." See, also, *Lane* v. *Rushmore, 127 N. J. Eq. 23.* And in the *Koehler Case, supra,* there were several independent transactions in litigation, involving three parties, and the bill was for an accounting, a concurrent equitable jurisdiction whose exercise depends upon the circumstances of the particular case. There, a motion to strike the bill under Chancery rule 69 was allowed to "stand over" until final hearing, and the prosecution of two pending law actions was restrained until the final hearing of the equity suit. Obviously, neither principle serves complainants here.

And the liability of a judgment at law to attack upon equitable grounds does not justify the assumption of jurisdiction by equity, before trial of the action, at the instance of a party who is in nowise prejudiced by the law court's lack of faculty for entertaining equitable defenses and administering equitable relief. The ouster of the law court from its jurisdiction in such circumstances, merely because matters not cognizable at law have been introduced by the adversary party by way of answer or counter-claim and their rejection might, perhaps, render the judgment later delivered therein assailable in equity, is not sustainable either in principle or in practice. That would plainly constitute the usurpation of a jurisdiction that fundamentally belongs to the law courts.

In this view, there is no occasion to consider the legal sufficiency of the factual allegations of the counter-claims, or whether the subject-matter thereof embodies matters of a strictly equitable nature. It suffices to say here that "deception" and "fraud" are legal defenses. *Schomp* v. *Schenck, supra.*

The order is accordingly reversed; and the cause is remanded with direction to dismiss the bill of complaint.

*For affirmance*—PERSKIE, OLIPHANT, WELLS, RAFFERTY, DILL, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, WACHENFELD, FREUND, McGEEHAN, JJ. 8.