21 A.3d 1131

KAREN WOOD AND FREDERICK WOOD, AS ASSIGNEES OF AL-
FONZIA CARUSO, PLAINTIFFS–APPELLANTS, v. NEW JER-
SEY MANUFACTURERS INSURANCE COMPANY, DEFEN-
DANT–RESPONDENT.

Argued May 3, 2011—Decided June 14, 2011.

*Charles M. Crocco* argued the cause for appellants (*Nelson, Fromer & Crocco,* attorneys).

*Michael J. Marone* argued the cause for respondent (*McElroy, Deutsch, Mulvaney & Carpenter,* attorneys; *Mr. Marone* and *Richard J. Williams, Jr.,* on the briefs).

*Evan L. Goldman* argued the cause for amicus curiae New Jersey Association for Justice (*Schiffman, Abraham, Kaufman & Ritter,* attorneys).

*Hugh P. Francis* argued the cause for amici curiae Insurance Council of New Jersey and Property Casualty Insurers Association of America (*Francis & Berry,* attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

*Rova Farms Resort, Inc. v. Investors Insurance Co. of America,* 65 *N.J.* 474, 323 *A.*2d 495 (1974), recognized a cause of action against an insurer in those instances where certain circumstances coalesce: where there is a settlement demand within the policy limits, the insurer in bad faith refuses to settle the claim, and the verdict above the policy limits is returned. In that defined setting, the carrier's bad faith failure to settle the claim within the policy limits may render the carrier liable for the entire judgment, including the excess above the policy limits. *See Fireman's Fund Ins. Co. v. Sec. Ins. Co.,* 72 *N.J.* 63, 70–71, 367 *A.*2d 864 (1976) (explaining that "*Rova* did not eliminate 'bad faith' as one of the factors to be proven where an action is instituted by an insured against his insurer based on its refusal to settle[, ... n]or did [it] adopt a rule making the insurer automatically liable to the insured for the over the limit judgment[, ...] conclud[ing] that it is unnecessary ... to embrace such an extended rule and such a rule has never been adopted" (citation and internal quotation marks omitted)).

Although *Rova Farms* was decided almost forty years ago, this appeal presents the first opportunity for this Court to determine "whether an insured's claims of bad faith against its insurer under [*Rova Farms*] are to be decided by a judge or jury." *Wood v. N.J. Mfrs. Ins. Co.*, 205 *N.J.* 13, 11 *A.*3d 372 (2010). We conclude that a *Rova Farms* claim that an insurer in bad faith failed to settle a claim within the policy limits, thereby in fact exposing its insured to liability for any excess, represents a traditional contract claim that the insurer breached the implied covenant of good faith and fair dealing and to which the right to trial by jury attaches.

## I.

On March 1, 2001, plaintiff Karen Wood,[1] a United States Postal Service letter carrier, was delivering mail at a condominium complex in Shrewsbury when she was attacked by a dog owned by John Critelli and kept by Alfonzia Caruso, Critelli's grandmother, in her condo unit. As a result of the attack, plaintiff was seriously injured, requiring at least two separate spinal surgeries.

### The Personal Injury Action: Wood v. Caruso

Plaintiff filed suit in the Law Division against Critelli, the dog owner, his grandmother Caruso, who lodged the dog, and Alfred Vail Mutual Association, the condominium association where Caruso's unit was located, seeking damages for the injuries plaintiff sustained from the attack; plaintiff demanded trial by jury on that complaint. Caruso, who maintained a $500,000 liability policy with defendant New Jersey Manufacturers Insurance Co., tendered the complaint to defendant for a defense and indemnity; defendant responded on behalf of both Caruso and her grandson, providing

---

[1] There were two plaintiffs to this action: plaintiff Karen Wood, who sought recovery for her injuries, and her husband Frederick, who pursued a per quod claim. For ease of reference, however, we refer solely to plaintiff Karen Wood and, in doing so, incorporate Fredrick Wood's derivative claims, as may be necessary by the context.

joint representation through a single counsel for its named insured, Caruso, and for its additional insured, Critelli.

The parties submitted the matter to non-binding arbitration, *see R.* 4:21A–1(a)(2), and the arbitrator determined that plaintiff's economic and non-economic damages totaled $600,000. The arbitrator apportioned liability as follows: ninety percent, or $540,000, to Caruso and ten percent, or $60,000, to the condominium association. The amount of the arbitration award against Caruso obviously exceeded the limits of liability of Caruso's liability policy with defendant. As permitted by *Rule* 4:21A–6(b)(1) and (c), defendant, on behalf of its insureds Caruso and Critelli, rejected the arbitrator's award and demanded a jury trial de novo.

Prior to the start of the jury trial, defendant conducted an internal evaluation of plaintiff's claims. As part of that process, the counsel assigned by defendant to represent Caruso and Critelli recommended that defendant authorize him to settle the case for the full $500,000 limit of the policy; he foresaw that "the non-compromisable workers' compensation lien [will be] well into the $400,000.00 [range] and the value of the case will exceed your insured's policy." Likewise, defendant's claims adjuster also recommended that "[t]he value of [plaintiff's] case would be in the neighborhood of [defendant's] policy[.]" In contrast, defendant's Major Claims Committee conducted its own review and concluded that the value of plaintiff's case would not exceed the $500,000 policy limits; it therefore authorized a $300,000 settlement. That offer of settlement was communicated to, and rejected by, plaintiff.

Although plaintiff had rejected defendant's $300,000 settlement offer, her counsel repeatedly asserted to Caruso's and Critelli's assigned counsel that she would accept a settlement at or near the $500,000 policy limits, albeit at a sum greater than the $300,000 rejected offer of settlement. When those efforts were rebuffed and invoking *Rova Farms*, plaintiff placed defendant on notice that, in her view of the aggregate of the circumstances presented, defendant's $300,000 settlement offer had been made in bad faith,

advising that, if she recovered a verdict in excess of the $500,000 policy limits, she would look to defendant for the excess.[2]

Defendant remained steadfast in its view that the most it would be willing to pay in settlement of plaintiff's claim was $300,000 even though, before the jury began its deliberations, plaintiff offered to settle the case for $450,000—$50,000 less than the policy limits.

The jury returned a verdict finding both Caruso and the condominium association negligent in failing to prevent the dog attack on plaintiff. The jury allocated liability as follows: fifty-one percent fault to Caruso, and forty-nine percent fault to the condominium association. The jury assessed damages in favor of plaintiff in the aggregate amount of $2,422,000, consisting of $1,400,000 in pain and suffering, $782,000 in economic damages, and $240,000 on plaintiff's husband's per quod claim. Given the jury's allocation of liability, the trial court molded the verdict and added prejudgment interest. As a result, a molded judgment was entered in plaintiff's favor and against Caruso in the amount of $1,408,320.33, a sum well in excess of her $500,000 policy limits.[3] Defendant filed a motion for a new trial or for remittitur on behalf of Caruso and Critelli, which was denied; defendant did not file a direct appeal therefrom on Caruso's or Critelli's behalf, and neither Caruso nor Critelli pursued their own appeal. Instead, defendant, on behalf of its insureds Caruso and Critelli, tendered and paid the full amount of its $500,000 policy limits to plaintiff; that

---

[2] Caruso, one of defendant's insureds, had retained her own personal counsel, who, also referencing *Rova Farms*, placed defendant on notice that, if plaintiff recovered a verdict in excess of Caruso's policy limits with defendant, Caruso too would look to defendant to satisfy the excess.

[3] The trial court also entered a molded judgment in favor of plaintiff and against the condominium association in the amount of $1,353,092.07. The condominium association appealed, and the judgment was affirmed in an unpublished decision; that judgment is now final. Therefore, neither the amount of nor the responsibility for the portion of the judgment entered against the condominium association are at issue in this appeal.

payment, however, only partially satisfied the judgment plaintiff had recovered against defendant's insureds.

*The Declaratory Judgment Action: Wood v. New Jersey Manufacturers Insurance Co.*

Because there was a deficiency between the judgment returned against defendant's insureds Caruso and Critelli and the sum in fact paid on their behalf by defendant, plaintiff negotiated and entered into an assignment of Caruso's *Rova Farms* claim against defendant; in exchange, plaintiff agreed "not to proceed personally against [Caruso] for the verdict in excess of [the] policy limits[.]" [4] Armed with that assignment, and thereby asserting that she stood in the shoes of defendant's insured Caruso, plaintiff commenced a declaratory judgment action in the Law Division against defendant—in respect of which plaintiff also demanded a jury trial [5]—alleging that defendant in bad faith had failed to settle plaintiff's underlying claim within the policy limits, thereby wrongfully exposing defendant's insureds—of whom she was an assignee—to any excess. In that declaratory judgment action,

---

[4] In addition, plaintiff executed a release in favor of both Caruso and Critelli; it provides, however, that "[t]his release specifically does not apply to [defendant]."

[5] That jury trial demand—which is set forth in the Civil Case Information Statement filed by plaintiff with her declaratory judgment complaint—may have been filed protectively; whether there is a right to a jury trial in a declaratory judgment action "depends on whether the action is the counterpart to one in equity or in law." *Ciba–Geigy Corp. v. Liberty Mut. Ins. Co. (In re Envtl. Ins. Declaratory Judgment Actions)*, 149 *N.J.* 278, 292, 693 *A.2d* 844 (1997). Although "an action by an insurer or an insured seeking a declaratory judgment of non-coverage or coverage respectively . . . does not implicate the right of trial by jury[,]" *Ins. Co. of N. Am. v. Anthony Amadei Sand & Gravel, Inc.*, 162 *N.J.* 168, 177–78, 742 *A.2d* 550 (1999), the claim plaintiff advanced was *not* a coverage claim, but a *Rova Farms* bad faith claim we determine to be a breach of contract claim. In any event, plaintiff—who originally demanded a jury trial in her declaratory judgment action against defendant and has never revoked that demand—now asserts that there is no jury trial right in respect of *Rova Farms* bad faith claims. In contrast, defendant, in its Civil Case Information Statement, did not demand a jury trial, but now states, albeit not unequivocally, that the right to a jury trial attaches to all *Rova Farms* bad faith claims.

plaintiff therefore sought to hold defendant liable for the entire judgment entered against defendant's insureds, without reference to the policy limits, plus post-judgment interest, counsel fees, statutory penalties (if applicable), and other relief. The declaratory judgment action was assigned to the same judge who had presided over the underlying personal injury jury trial that resulted in the verdict in plaintiff's favor.

Before discovery had been completed, plaintiff moved for summary judgment. Defendant opposed that application on several grounds: it asserted that summary judgment was premature as discovery had not yet been completed; that plaintiff had failed to provide discovery as demanded; [6] and that the discovery period should be extended.[7] All of defendant's motions were denied, and plaintiff's motion for summary judgment was granted. In respect of the latter, the trial court explained:

> Under *Rova Farms*, an insurer has an affirmative duty to explore settlement possibilities. It has a positive fiduciary duty to take the initiative and attempt to negotiate a settlement within the policy coverage. It must do this in good faith which ... requires it to consider the interests of the insured as well as its own.
>
> In the instant case, the Court has considered the affidavits and exhibits submitted by [defendant]. Not once in any of those documents could the Court find any reference to [defendant]'s duty to protect its insured. All the certifications which the Court reviewed—reviews in the most favorable light to [defendant—] is that the insurer took the position that plaintiff's claim was questionable, that her experts were unreliable, and never deviated from that position, despite indications from numerous sources[,] which included the attorney handling the case for [defendant], the adjustor, the arbitrator, and [a prior judge]. There is no indication that [defendant] took any initiative to settle the case after the first and only offer.

Commenting on the strength and merit of defendant's opposition to plaintiff's motion for summary judgment, the trial court

---

[6] Defendant presented that claim by way of a cross-motion to dismiss the complaint pursuant to *Rule* 4:23–5(a)(1) for failure to provide discovery; defendant's cross-motion was denied.

[7] Defendant also moved to recuse the trial judge, who, as noted earlier, presided over the initial personal injury jury trial, claiming that, based on the earlier proceedings, the trial judge was biased against defendant; that motion too was denied.

emphasized that "[a] proper analysis of this claim which kept in mind the interest of the insured would require something more specific than a generic statement that this claim was submitted to a committee who approved [the $300,000 settlement offer]." The trial court noted that defendant "proceeded to trial without an expert witness as to economic loss[,]" and that "[t]here was no evidence adduced at trial that plaintiff's injuries were preexisting or that she had lied about them." Characterizing defendant's actions as "cavalier," the trial court described defendant's settlement posture as "a take-it-or-leave-it offer based on assumptions [defendant] never attempted to prove at trial." The trial court concluded that "[t]he record reflects that there were numerous attempts to settle the case within the policy limits[,] which were rejected. In the final analysis, [defendant] gambled on a trial contrary to the interests of its insured." Invoking *Brill v. Guardian Life Insurance Co. of America*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), and finding that "there are no issues of any material fact[,]" the trial court entered summary judgment in plaintiff's favor and against defendant in the amount of $965,838.53, representing the excess of the judgment plaintiff had secured above the $500,000 policy limits previously paid by defendant.[8]

### The Declaratory Judgment Appeal

Defendant appealed and, in an unpublished opinion, the Appellate Division reversed the entry of summary judgment in plaintiff's favor and remanded the case to the Law Division.[9] In short,

---

[8] Defendant filed a supersedeas bond, *see Rule* 2:9–6(a), and, determining that the bond was satisfactory, the trial court stayed execution on the judgment granted to plaintiff "pending further order of the court[.]"

[9] The Appellate Division also granted amicus curiae status to the New Jersey Association for Justice, the Insurance Council of New Jersey, and the Property Casualty Insurers Association of America, permitting them, by order, to both file briefs and argue the cause. *See R.* 1:13–9(a) ("The order granting the motion [for leave to appear as amicus curiae] shall define with specificity the permitted extent of participation by the amicus[.]"). Under *Rule* 1:13–9(d)(3) and (4), that grant of amicus status continued through and including the appeal before this Court.

the Appellate Division concluded that, "[v]iewing the record, as we must, in a light most favorable to [defendant] up to the time before the jury's verdict, it appears that there were countervailing factors that led [defendant] to be more hopeful about its chances of containing the exposure at or below $300,000." It noted that

there are genuine fact-sensitive determinations that need to be made about the reasonableness of [defendant]'s handling of settlement negotiations in the underlying tort action. That assessment of reasonableness will hinge, to some degree, upon the credibility and persuasiveness of fact witnesses. It may also depend upon the testimony of expert witnesses opining about what went wrong here on the settlement front and why it went wrong. Prudence dictates that these pivotal questions of reasonableness and bad faith be decided in this case after a full-blown evidentiary presentation before the factfinder. By no means are we saying that summary judgment in favor of an insured is never appropriate in a bad faith case, but simply that there is enough proof on both sides of the ledger here to warrant a plenary disposition.

[ (footnote omitted).]

The panel then turned to the question of "who the appropriate factfinder will be." It explained that no "reported cases in New Jersey have clarified whether bad faith claims in this context should be heard by a judge or by a jury." However, "[g]iven the absence of full briefing on the issue, and the respective tactical judgments that both parties presumably would want to undertake after their receipt and review of this opinion," the Appellate Division demurred, electing to "leave it to the trial court on remand to resolve any dispute over whether the factfinder in the remand proceeding should be a jury or the court." [10]

Plaintiff sought certification, which was granted but "limited to the issue of whether an insured's claims of bad faith against its

---

[10] The Appellate Division also rejected defendant's challenge to the trial court's denial of defendant's motion to recuse the trial judge. Nevertheless, the panel "direct[ed] that, on remand, the case be assigned to a different judge than the one who previously heard the matter." It did so "not because [it] believe[d] that the prior judge would be incapable of fairly and conscientiously considering the merits anew, or that she is disqualified from hearing the case as a matter of law." Instead, the panel ordered "the reassignment of the case to spare the prior judge the potential difficulty and discomfort of revisiting the bad faith issues in light of the definitive opinions that she had already expressed on those subjects in her summary judgment ruling ... now vacated for legal reasons."

insurer under [*Rova Farms*] are to be decided by a judge or jury." *Wood, supra,* 205 *N.J.* at 13, 11 *A.*3d 372. The parties, but not amici, were granted leave to file supplemental briefs addressing the limited certified question.

## II.

Plaintiff asserts that the right to a trial by jury does not attach to a *Rova Farms* claim. Focusing on language within both *Rova Farms, supra,* 65 *N.J.* at 496, 323 *A.*2d 495, and *Radio Taxi Service, Inc. v. Lincoln Mutual Insurance Co.,* 31 *N.J.* 299, 313, 157 *A.*2d 319 (1960), describing a form of fiduciary obligation imposed on an insurer to negotiate a settlement within the policy limits on its insured's behalf, plaintiff asserts that a "fiduciary duty is primarily equitable in nature" and that " '[t]here is no right to a trial by jury on equitable claims.' " (quoting *500 Columbia Tpk. Assocs. v. Haselmann,* 275 *N.J.Super.* 166, 171, 645 *A.*2d 1210 (App.Div.1994)). In plaintiff's view, a *Rova Farms* bad faith claim sounds in strict liability, and "whether the carrier breached its fiduciary relationship with its insured [is] based upon issues that are clearly outside the knowledge of the average juror." Plaintiff cautions that submitting a *Rova Farms* bad faith claim for determination by a jury "would essentially require a second full trial." She asserts that "[a] [j]udge[,] on the other hand[,] having experience in these kinds of matters, could and should be able to decide that issue[.]" Consistent with her theme of advancing judicial economy, she urges that a *Rova Farms* bad faith claim should be tried by the same judge who presided over the underlying case because, in her view, that judge is uniquely situated to weigh all of the factors relevant to whether the insurance carrier acted in good faith.

Invoking the common law history of the jury trial right in New Jersey, defendant asserts that the relationship between an insurer and its insured is one based in contract, and an insured's bad faith claim under an insurance policy is nothing more than a species of contract claim arising under the implied covenant of good faith

and fair dealing. Defendant argues that a *Rova Farms* bad faith claim thus arises under a contract and that "[d]isputes between insurers and insureds concerning their respective rights and obligations under the insurance policy are common-law, breach-of-contract actions for which legal remedies provide the primary form of relief" and to which the right to a jury trial attaches. That said, defendant's assertion that a *Rova Farms* bad faith claim should be tried to a jury is not without qualification or limitation. It notes that "equitable concepts, including an insurer's fiduciary duty, fairness, and honesty, underlie an insurer's good faith obligations to its insured." It recognizes that although "these principles do not change the underlying contractual nature of the action, they do weigh in favor of the application of a bench trial." Straddling both sides of the question, then, defendant inconclusively states that, in respect of a *Rova Farms* bad faith claim, "a bench trial may be more appropriate in some cases."

Amicus the New Jersey Association for Justice argues that, for simplicity and expediency purposes, *Rova Farms* bad faith cases should be decided by a judge rather than a jury. It claims that, because a *Rova Farms* claim did not exist at common law, no constitutional right to a civil jury trial attaches to it. It urges that practical considerations—the fact that the majority of *Rova Farms* bad faith cases arise as a result of a post-trial assignment of contract rights from the original-personal-injury-defendant/insured/assignor to the plaintiff/assignee, or that the issue of the insurer's good faith was not presented in the original trial—render *Rova Farms* bad faith claims so unwieldy and so prone to potentially inconsistent results as to militate against two complete and separate jury trials.

Amici the Insurance Council of New Jersey and the Property Casualty Insurers Association of America advances an elegantly simple argument: that a *Rova Farms* bad faith case is a mundane and everyday contract claim to which the right to a jury trial attaches, no more and no less.

III.

A.

The right to trial by jury has long been a bedrock in the dispute resolution mechanisms of this State, and a bulwark against anti-democratic forces. As early as its original Constitution dated July 2, 1776—while still referring to itself as a "colony"—New Jersey recognized the core importance of the jury trial right, emphasizing "that the inestimable right of trial by jury shall remain confirmed, as part of the law of this colony, without repeal, forever." *N.J. Const. (1776)* art. XXII. Nearly a century later, with the adoption of what was then a new Constitution on June 29, 1844, New Jersey reaffirmed that "[t]he right of trial by jury shall remain inviolate[.]" *N.J. Const. (1844)* art. I, § 7.

The jury trial right that found clear and robust expression in both the 1776 Constitution and in the 1844 Constitution was carried over to our current Constitution adopted in 1947. As noted in *In re Environmental Insurance Declaratory Judgment Actions, supra*, 149 *N.J.* at 291, 693 *A.*2d 844, "Article I, Paragraph 9 of the 1947 New Jersey Constitution provides that '[t]he right of trial by jury shall remain inviolate.' *N.J. Const.* art. 1, ¶ 9." *In re Environmental Insurance Declaratory Judgment Actions* also explains that "[t]his provision guarantees the right to trial by jury as it existed at common law at the time of the adoption of the New Jersey Constitution[,]" and that, "[t]raditionally, the right to a jury trial attaches in legal, but not equitable, actions." *Ibid.* (citing *Weinisch v. Sawyer*, 123 *N.J.* 333, 343, 587 *A.*2d 615 (1991); *In re LiVolsi*, 85 *N.J.* 576, 587, 428 *A.*2d 1268 (1981)). It also highlights that, because the federal constitutional right to trial by jury "is not binding on the states[,]" *id.* at 292, 693 *A.*2d 844 (citing *Minneapolis & St. Louis R.R. v. Bombolis*, 241 *U.S.* 211, 217, 36 *S.Ct.* 595, 596, 60 *L.Ed.* 961, 963 (1916)), "the right to a trial by jury in New Jersey must arise under either a statute or the state constitution." *Ibid.* (citing *Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 435–36, 561 *A.*2d 1130 (1989)).

Addressing the specific genus of a declaratory judgment action, the Court in *In re Environmental Insurance Declaratory Judgment Actions* explained that "[d]eclaratory judgment actions were unknown at common law[,]" noting that, "[i]n New Jersey, the Uniform Declaratory Judgments Act (the 'Act'), *N.J.S.A.* 2A:16–50 to –62, governs the right to declaratory relief." *Ibid.* It underscored that "[t]he Act does not specifically state when the right to a jury trial attaches to an action for a declaratory judgment. Instead, the Act provides that factual issues 'may be tried and determined in the same manner as issues of facts are tried and determined in other civil actions[.]'" *Ibid.* (quoting *N.J.S.A.* 2A:16–58). Thus, "[d]epending on the issue, a declaratory judgment can be either legal or equitable[, and t]hus, the filing of a declaratory judgment action for insurance coverage does not necessarily engender the right to a jury trial." *Ibid.* (citations omitted). In sum, then, "[i]n a declaratory judgment action, the right to a jury trial depends on whether the action is the counterpart to one in equity or in law." *Ibid.*

 Regardless of how an action is styled, the procedure applied to determine whether an action is primarily legal—and thus subject to trial by jury—or equitable—to which no jury trial right attaches—is well-settled: "'we look to the historical basis for the cause of action and focus on the requested relief[,]' and o]f the two, the more persuasive factor is the requested relief." *Id.* at 293, 693 *A.*2d 844 (quoting *Weinisch, supra,* 123 *N.J.* at 343, 587 *A.*2d 615). And, it matters not if the action places at issue both equitable and legal concerns because, under the doctrine of ancillary equitable jurisdiction, "[i]f an action is primarily equitable, a court of equity may assume jurisdiction over ancillary legal issues." *Id.* at 295, 693 *A.*2d 844 (citing *Fleischer v. James Drug Stores,* 1 *N.J.* 138, 150, 62 *A.*2d 383 (1948)).

We turn then to the discrete issue certified on appeal: whether a *Rova Farms* bad faith claim is triable by right to a jury. As a threshold matter, that question requires an inquiry into both the bases for the claims undergirding plaintiff's prayer for relief as

well as the type and quality of the specific relief she has requested. *Lyn–Anna Props. v. Harborview Dev. Corp.*, 145 *N.J.* 313, 331, 678 *A.*2d 683 (1996) ("In assessing whether jury trial rights are infringed, courts should 'consider the nature of the underlying controversy as well as the remedial relief sought[.]'" (quoting *Shaner, supra,* 116 *N.J.* at 450–51, 561 *A.*2d 1130)).

### B.

■ Although styled as a "verified complaint for declaratory judgment," plaintiff alleged she was the assignee of Caruso's rights under Caruso's insurance policy with defendant and that defendant had "violated its fiduciary duty owed to Caruso by failing to negotiate the claim in good faith, pursuant to [*Rova Farms* ] and the governing law in the State of New Jersey." Plaintiff further alleged that defendant had "refused to pay the judgment amount of $1,408,320.33, plus post[-]judgment interest, pursuant to the contract of insurance and governing law in the State of New Jersey" and that defendant "has refused to perform on the contract of insurance[,]" thereby breaching its insurance contract. Based on those allegations, plaintiff sought both a decree of specific performance ordering that defendant "pay the total judgment amount entered against their insured ... plus [post-]judgment interest; costs of this suit; attorney's fees; statutory penalties; and such other and further relief as the Court may deem equitable and just[,]" as well as a declaration to the effect that defendant was responsible therefor.

■ The determination of whether a jury trial attaches to a plaintiff's cause of action cannot be driven by the label a party affixes to its pleading; it is the obligation of the judiciary to transcend superficialities and reach the substance of what is alleged and sought. As a result of that judicial exercise, and no matter how plaintiff has couched her claim against defendant, it is undisputed that her *Rova Farms* bad faith claim is a garden-variety action at law that requires that she prove that defendant breached its insurance contract by its failure in bad faith to settle

plaintiff's original personal injury suit against defendant's insureds. Despite language in the case law referring to the relationship between the insurer and its insured as something akin to a "fiduciary relationship," it remains unmistakable that, at its core, a *Rova Farms* bad faith claim is a simple breach of contract claim, one that perforce must assert that, by failing in bad faith to compromise a claim within the policy limits prior to a verdict, the insurer has breached the implied contractual covenant of good faith and fair dealing and, therefore, should be liable for the entire judgment and not just to the extent of the policy limits.

We recently re-emphasized that "every contract in New Jersey contains an implied covenant of good faith and fair dealing[, t]hat is, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Kalogeras v. 239 Broad Ave., L.L.C.*, 202 *N.J.* 349, 366, 997 *A.*2d 943 (2010) (citations and internal quotation marks omitted); *see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 *N.J.* 210, 224, 864 *A.*2d 387 (2005) ("Every party to a contract ... is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract."); *Sons of Thunder v. Borden, Inc.*, 148 *N.J.* 396, 420, 690 *A.*2d 575 (1997) (explaining that "every contract in New Jersey contains an implied covenant of good faith and fair dealing" (citations omitted)). Also, in considering whether an implied covenant of good faith and fair dealing is contained within a contract, express contractual terms generally do not provide a definitive response; it is critical to note that, "[i]n the first instance, the implied covenant of good faith and fair dealing is precisely what its name allows: it is an *implied* covenant." *Kalogeras, supra*, 202 *N.J.* at 366, 997 *A.*2d 943 (emphasis in original).

The contours of that analysis are not altered simply because the contract at issue is a policy of insurance; it is well-settled that, in New Jersey, "every insurance contract contains an implied covenant of good faith and fair dealing." *Price v. N.J. Mfrs. Ins. Co.*, 182 *N.J.* 519, 526, 867 *A.*2d 1181 (2005) (citing

*Sears Mortgage Corp. v. Rose,* 134 *N.J.* 326, 347, 634 *A.*2d 74 (1993); *Griggs v. Bertram,* 88 *N.J.* 347, 360–61, 443 *A.*2d 163 (1982)); *see also Courvoisier v. Harley Davidson,* 162 *N.J.* 153, 160, 742 *A.*2d 542 (1999) (" 'In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other party to receive the benefits of the agreement.' " (quoting *Merritt v. J.A. Stafford Co.,* 68 *Cal.*2d 619, 68 *Cal.Rptr.* 447, 440 *P.*2d 927, 931 (1968))).

■ Fundamentally, and regardless of how it is couched or what label is affixed to it, a *Rova Farms* bad faith claim is and always has been a breach of contract claim, and it is beyond question that a breach of contract claim was at common law and remains today an action triable to a jury. *Steiner v. Stein,* 2 *N.J.* 367, 372, 66 *A.*2d 719 (1949) (explaining that, in breach of contract actions arising both before and after 1947 Constitution, "the parties were and are entitled to a trial by jury as of right" (citations omitted)). We also so conclude because the relief sought by plaintiff—the payment of the money damages judgment she recovered against defendant's insureds in excess of the policy limits of the insurance contract between defendant and its insured—invokes solely legal and not equitable relief and, assuming bad faith liability is imposed, upon payment of that excess plaintiff will have received the full measure of recovery she seeks. In that regard, New Jersey traditionally has deemed it "elemental that . . . equitable processes are available only to the party who cannot have a full measure of relief at law," and that it is "[t]he lack of an adequate remedy at law [that forms] the basis of the appeal to equitable jurisdiction[.]" *Bolte v. Rainville,* 138 *N.J. Eq.* 508, 512, 48 *A.*2d 191 (E. & A.1946). That is because "[e]quity rectifies the invasion of existing primary rights not so cognizable or adequately redressable at law; and thus it is that, in all such instances, only the party who cannot obtain a sufficient remedy at law may enlist the aid of equity." *Ibid.*

In short, plaintiff's failure to demonstrate that she lacks an adequate remedy at law, coupled with the clear breach of contract

allegations of her complaint, lead inescapably to the conclusion that her *Rova Farms* bad faith case presumptively is an action at law to which the right to trial by jury attaches.

Of course, determining that the right to trial by jury attaches to a *Rova Farms* bad faith claim does not mean that every *Rova Farms* bad faith suit may only be tried to a jury. As with all other civil cases, any party to a civil action at law may demand trial by jury, *Rule* 4:35–1(a), of all or some of the issues in contest, *Rule* 4:35–1(b), recognizing that the failure to demand a jury trial as required by the *Rules* "constitutes a waiver of trial by jury." *R.* 4:35–1(c). Likewise, even if a jury trial is allowable as of right and in fact has been demanded, the parties nevertheless retain the right to "consent to trial by the court without a jury[.]" *R.* 4:35–1(d). Given the flexibility codified in the *Rules,* we remain confident that the ability of the parties to waive the jury trial right, either by declining to demand a jury or by later consenting to trial without a jury, will accommodate those instances raised by defendant where it asserts that, perhaps, a bench trial would be more fitting. That determination does not implicate whether there is a right to a jury trial, but more so whether a jury trial is appropriate under the circumstances; that is a determination vested exclusively within the exercise of each party's discretion in deciding whether to waive its personal right to trial by jury.

## IV.

We hold that the right to trial by jury attaches to a *Rova Farms* bad faith claim, an issue not reached by the Appellate Division. For that reason, we modify the judgment of the Appellate Division to be consistent with our holding and, as modified, the judgment of the Appellate Division is affirmed.

*For affirmance as modified*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.