NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5474-14T4

WAYNE HALL,

 Plaintiff-Appellant,

v.

CUMBERLAND MUTUAL FIRE
INSURANCE COMPANY,

 Defendant-Respondent.

_________________________________

 Submitted December 8, 2016 – Decided August 17, 2017

 Before Judges O'Connor and Whipple.

 On appeal from Superior Court of New
 Jersey, Law Division, Cape May County,
 Docket No. L-0368-14.

 Claims Worldwide, LLC, attorneys for
 appellant (Daniel W. Ballard, on the
 brief).

 Methfessel & Werbel, attorneys for
 respondent (Richard A. Nelke and
 Christian R. Baillie, on the brief).

PER CURIAM

 Plaintiff Wayne Hall appeals from a July 6, 2015 Law

Division order denying his motion for reconsideration of an

 1
order granting defendant Cumberland Mutual Fire Insurance

Company summary judgment dismissal. We affirm.

 I

 In August 2013, plaintiff's home was damaged during a

wind storm. Plaintiff submitted a claim under his

homeowner's insurance policy issued by defendant. Both

parties retained independent adjusters to appraise and

provide estimates of the cost to repair or replace various

parts of the building. It was not disputed the roof had to

be replaced and portions of the home's interior repaired.

 Plaintiff's adjuster estimated the cost to restore the

property, referred to as the replacement cost value, was

$24,356.57. Defendant's adjuster estimated the replacement

cost value was $21,781.77. Defendant took the position

that, after removing $5771.25 for depreciation, plaintiff

was entitled to $16,010.52, referred to as the actual cash

value. After subtracting the $1000 deductible, defendant

maintained plaintiff was entitled to $15,010.52.

 Despite the differences between the two adjustors

about the overall replacement cost value, plaintiff

ultimately signed a "Sworn Statement in Proof of Loss"

(proof of loss), attesting the replacement cost value of

$16,010.52 and the depreciation value of $5771.25 was

 2
accurate. Defendant then paid plaintiff $15,010.52, the

actual cash value minus the deductible. Plaintiff hired a

contractor who replaced the roof, but plaintiff did not

arrange for any other work to be done on the house.

 The cost to replace the roof was $10,100. Defendant

had estimated that, for the roof, the replacement cost

value was $9059.98 and the value of the depreciation was

$3351.10, making the actual cash value of the roof

$5708.88. Plaintiff claimed the policy required that, if

an insured repaired or replaced a component of a building,

such as a roof, and the actual cost exceeded the actual

cash value of such component, defendant was obligated to

pay the insured the difference between the actual cost and

the actual cost value. Thus, plaintiff demanded defendant

pay him $4391.12, the difference between the cost to

replace the roof ($10,100) and the roof's actual cash value

($5708.88). He also asserted he was entitled to the

depreciation attributable to the roof and insisted

defendant pay him $3351.10, as well.

 Plaintiff referred to the following language in

support of his position:

 2. Buildings covered . . . at
 replacement cost without deduction for
 depreciation, [are] subject to the
 following:

 3
 a. [W]e will pay the cost to
 repair or replace, after
 application of any deductible and
 without deduction for
 depreciation, but not more than
 the least of the following
 amounts:

 (1) The limit of liability
 under this policy that
 applies to the building;

 (2) The replacement cost of
 that part of the building
 damaged with material of like
 kind and quality and for like
 use; or

 (3) The necessary amount
 actually spent to repair or
 replace the damaged building.

 . . . .

 d. We will pay no more than the
 actual cash value of the damage
 until actual repair or replacement
 is complete. Once actual repair
 or replacement is complete, we
 will settle the loss as noted in
 2.a. and b. above.

 [(Emphasis added).]

 Defendant disputed the language supported plaintiff's

demands. Defendant maintained that, at best, plaintiff was

eligible to recover the value of the depreciation, but not

until plaintiff had spent the entirety of the actual cash

value provided to him on his claim, or $15,010.52.

Therefore, defendant refused to pay plaintiff either the

 4
$4391.12 or the $3351.10 he requested. Plaintiff responded

by filing suit.

 In his complaint, plaintiff asserted a claim for

breach of contract, alleging defendant failed to indemnify

him as required under the policy. He also maintained

defendant breached the implied covenant of good faith and

fair dealing contained in every insurance contract, see

Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577-78 (2011).

After the close of discovery, defendant sought summary

judgment dismissal of the complaint. Plaintiff did not

oppose the motion. Finding the language in the policy

dispositive, the trial court granted defendant's motion and

dismissed the complaint.

 Plaintiff filed a motion for reconsideration, claiming

he had never been served with the motion for summary

judgment. He also contended a question of fact and the

court's misinterpretation of the policy language precluded

summary judgment. As he was required to show that, one, he

had never been served with the motion and, two, his

response to the original motion would have resulted in the

denial of the motion, plaintiff provided the evidence and

arguments he believed would have defeated such motion.

 5
 On reconsideration, the court declined to resolve the

factual question whether plaintiff had been properly served

with the motion. Instead, the court considered the

evidence and arguments plaintiff submitted and considered

whether they would have defeated the original motion for

summary judgment. Determining they would not have, the

court denied the motion for reconsideration.

 II

 On appeal, plaintiff contends the trial court erred

because it failed to (1) consider his motion for

reconsideration; (2) recognize there were material issues

of fact in dispute that precluded summary judgment; and (3)

correctly interpret the policy language. We reject these

contentions and affirm.

 We review a decision to grant summary judgment "in

accordance with the same standard as the motion judge."

Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016)

(quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

Summary judgment must be granted if "the pleadings,

depositions, answers to interrogatories and admissions on

file, together with affidavits, if any, show that there is

no genuine issue as to any material fact challenged and

that the moving party is entitled to a judgment or order as

 6
a matter of law." R. 4:46-2(c). Of course, the trial

court must grant all legitimate inferences in favor of the

non-moving party. Ibid.

 First, it is obvious from the record the court did

review plaintiff's motion for reconsideration, taking into

to consideration the evidence and arguments plaintiff would

have presented had he responded to defendant's original

motion. Nevertheless, plaintiff did not prevail, but not

because the court failed to consider plaintiff's position.

Plaintiff's motion was denied because there were no

questions of fact barring summary judgment, and, more

important, as a matter of law, the policy language

supported defendant's position.

 In his brief, plaintiff contends there exists a

question of fact that warranted the denial of the motion.

Specifically, plaintiff notes his adjustor had claimed in

his certification that both he and plaintiff disagreed with

defendant about the replacement cost value to restore the

entire house. Plaintiff did not assert there were any

other material facts in dispute which the trial court

overlooked.

 The certification of the adjustor to which plaintiff

refers states "[n]either myself nor plaintiff ever agreed

 7
to [defendant's] determination of the replacement cost o[r]

actual cash value of plaintiff's claim." However, only the

plaintiff's consent was required, and his signing of the

proof of loss – under oath no less – created the requisite

proof plaintiff did accede and agreed with defendant's

estimates, and there is no competent evidence indicating

otherwise. Further, plaintiff did not submit his own

certification in support of the reconsideration motion

setting forth how his representations in the proof of loss

were erroneous. He merely submitted his adjustor's

certification, which was insufficient.

 As for plaintiff's argument the court misinterpreted

the policy language, he maintains the policy language is

ambiguous. He argues the trial court should have heeded

his adjustor's assertion it is standard within the

insurance industry to release to an insured the value of

the depreciation attributable to a component part of a

project once that component is repaired or replaced.

Plaintiff maintains because replacement cost value,

depreciation, and actual cash value are broken down in an

estimate for each repair or replacement job, the

depreciation amount for each job is easily ascertainable.

Thus, according to him, defendant was compelled to pay the

 8
value of the depreciation after each job and not upon the

completion of the entire project.

 First, the expert opinion provided by the adjustor in

his certification was not provided to defendant before the

discovery end date, and plaintiff had not, as required by

Rule 4:17-7, certified the adjustor's expert opinion was

not reasonably available or discoverable by the exercise of

due diligence prior to the discovery end date. In the

absence of such a certification, the court was required to

disregard the adjustor's expert opinion. See R. 4:17-7.

Second, and more important, the policy language here is not

ambiguous. As with other contracts, the terms of an

insurance policy define the rights and responsibilities of

the parties. N.J. Citizens United Reciprocal Exch. v. Am.

Int'l Ins. Co. of N.J., 389 N.J. Super. 474, 478 (App. Div.

2006). "The interpretation of an insurance contract is a

question of law for the court to determine, and can be

resolved on summary judgment." Adron, Inc. v. Home Ins.

Co., 292 N.J. Super. 463, 473 (App. Div. 1996). The

court's standard of review regarding conclusions of law is

de novo. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.,

202 N.J. 369, 385 (2010).

 "Generally, an insurance policy should be interpreted

 9
according to its plain and ordinary meaning." Voorhees v.

Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992). If the

plain language of the policy is clear and unambiguous, then

there is no need for further inquiry. Chubb Custom Ins.

Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238

(2008). Certainly, "an insurance policy is not ambiguous

merely because two conflicting interpretations have been

offered by the litigants." Simonetti v. Selective Ins.

Co., 372 N.J. Super. 421, 428 (App. Div. 2004). "A genuine

ambiguity arises only where the phrasing of the policy is

so confusing that the average policyholder cannot make out

the boundaries of coverage." Passaic Valley Sewerage

Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596,

608 (2011) (quoting Progressive Cas. Ins. Co. v. Hurley,

166 N.J. 260, 274 (2001)).

 Here, section 2.d. of the policy language states

defendant "will not pay more than the actual cash value of

the damage until actual repair or replacement is complete."

Then, once the actual repair or replacement is complete,

defendant will "settle the loss as noted in 2.a. and b.

above." Section 2.b. is not implicated here, but 2.a.(3)1

states defendant will pay the cost of the repairs or

1
 Section 2.a.(1) and (2) are not applicable.

 10
replacement and the depreciation, minus the deductible,

after the necessary amount to fix the damaged building has

been actually spent.

 Read together, section 2.a.(3) and section 2.d.

require all of the repairs or replacements in the building

be completed before any depreciation can be released to the

insured. (Here, the actual cost to repair had been

previously provided to plaintiff before he commenced work

on the house). Section 2.a.(3) does not state depreciation

on a component part of a building may be released to an

insured once that part is repaired or replaced but, rather,

when the amount necessary to repair and replace "the

damaged building" has been spent. Defendant is not

compelled to make periodic payments from the depreciation

reserve as various repairs or replacement work is completed

on a piecemeal basis, but only when the work on the entire

building has been completed.

 Here, plaintiff fixed the roof but did not complete

any of the other work on the building for which he had been

provided $15,010.52. Therefore, he is not yet eligible to

receive the value of any depreciation, or entitled to any

other payments, from defendant.

 11
 We have considered plaintiff's remaining arguments and

conclude they are without sufficient merit to warrant

discussion in a written opinion. See R. 2:11-3(e)(1)(E).

 Affirmed.

 12