**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5174-16T3

FRANCISCO FERRO,

      Plaintiff-Appellant,

v.

TRAVELERS INSURANCE
COMPANY a/k/a ST. PAUL
PROTECTIVE INSURANCE
COMPANY,

      Defendant-Respondent.

_____

           Argued September 17, 2018 – Decided  December 3, 2018

           Before Judges Messano and Rose.

           On appeal from Superior Court of New Jersey, Law
           Division, Morris County, Docket No. DC-3097-17.

           James E. Mackevich argued the cause for appellant
           (Mackevich, Burke & Stanicki, attorneys; James E.
           Mackevich, on the brief).

           Timothy P. Smith argued the cause for respondent
           (Kinney, Lisovicz, Reilly & Wolff, PC, attorneys;
           Timothy P. Smith, of counsel and on the brief).

PER CURIAM

Plaintiff Francisco Ferro appeals from the July 13, 2017 Special Civil Part order granting summary judgment to defendant St. Paul Protective Insurance Company, improperly pled as Travelers Insurance Company, limiting defendant's "liability" for payment of vehicle storage costs to nineteen days at the "contract rate," and otherwise dismissing plaintiff's complaint with prejudice. We limit our review to the motion record before the Law Division judge. Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000).

On October 28, 2016, plaintiff's 2006 Honda Ridgeline collided with another vehicle while both drivers were attempting to make a right-hand turn onto the same street. Plaintiff's young son was in the vehicle, but neither he nor plaintiff was injured, and, despite the damages it sustained, plaintiff was able to drive his vehicle to Jardims' Auto Body Corp. (Jardims') in Roselle.[1]

Defendant provided automobile insurance to plaintiff pursuant to a policy that included collision coverage. Under the terms of the policy, defendant agreed to pay the lesser of the "[a]ctual cash value of the . . . damaged property at the time of loss[,]" or the "[a]mount necessary to repair or replace . . . damaged

---

[1] The police report states plaintiff drove the vehicle from the scene, but, in a certification opposing summary judgment, plaintiff claimed the vehicle was "towed." Plaintiff did not state, however, that the vehicle was inoperable.

parts or equipment . . . necessary to restore the vehicle to its pre-loss physical condition at the time of loss," depreciation and physical condition being considered. The policy explained the process for resolving disputes between insured and insurer over the amount of any claimed loss.

> If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser . . . . The two appraisers will select an umpire. . . . The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Under the policy terms, plaintiff was obligated to promptly notify defendant of an accident, provide all necessary documentation in support of the claim, and cooperate with defendant throughout the claim process.

The policy also included a "Claims Internal Appeal Procedure," if plaintiff was dissatisfied with a "'final' offered claim settlement." Under the procedure, defendant's Internal Appeals Panel would review and issue a final written determination. If plaintiff was still dissatisfied with the panel's decision, plaintiff could appeal to the Office of the Insurance Claims Ombudsman in the New Jersey Department of Banking and Insurance. The policy further stated that "[n]o legal action may be brought against [defendant] until there has been full compliance with all the terms of this policy."

A-5174-16T3

Plaintiff did not immediately report the accident to defendant. Instead, the other driver contacted defendant on November 7, 2016, and defendant obtained a copy of the police report the next day. Defendant acknowledged plaintiff's claim the next day in a letter, stating it was "verifying coverage and researching the facts of the accident." Defendant also advised plaintiff, "if we determine there is coverage for this loss[,] we will not make payment on storage charges incurred after [November 15, 2016]. We request that you have your vehicle moved before this date to a location which does not have any storage fees."

That same day, defendant's adjuster inspected the vehicle at Jardims'. The estimated cost of repairs, minus plaintiff's $500 deductible, was $5640.61; the vehicle was declared a total loss. On defendant's behalf, CCC One, an independent automobile evaluation company, prepared three market valuation reports of plaintiff's vehicle between November 9 and December 12, 2016; the lowest valuation was $9521 and the highest was $9958. Plaintiff contested defendant's conclusion that based upon the police report filed, he was at fault and said he would seek amendment of the report within thirty days. The record reveals that plaintiff's attempts to have an amended report filed were unsuccessful.

4

On November 11, 2016, defendant offered plaintiff a net settlement of $6121.93[2] and agreed to pay nearly $1500 to Jardims'. Defendant requested a copy of the vehicle's title. On November 16, 2016, defendant made a second request for the vehicle's title. The following week plaintiff responded, once more disputing liability for the accident and restating his efforts to obtain an amended police report.

In a letter dated November 22, 2016, defendant notified plaintiff of his right to appeal if the "'final' offered claim settlement remain[ed] unacceptable to [him]." Further, the letter outlined the appeal procedure plaintiff should follow if "[he] wish[ed] to appeal [the] disputed claim." Plaintiff responded a week later stating that he did "not want to discuss anything with [defendant] until he is finished disputing liability and the police report." On November 30, 2016, plaintiff advised defendant he accepted fault for the accident.

Months of negotiations followed, in which plaintiff submitted bills and invoices for items he had installed in the vehicle which, he contended, increased its value even though it had more than 269,000 miles on the odometer. In February 2017, defendant obtained another report from CCC One that noted these "refurbishments" and valued the vehicle at $11,575.63. Defendant sent a

---

[2] $8899 + $622.93 (sales tax) - $500 (deductible) - $2900 (salvage value).

letter to plaintiff memorializing the settlement options, reiterating that storage charges incurred after November 16, 2016 would be deducted from the settlement, and restating the appeal procedure.

Plaintiff did not respond. On March 8, defendant contacted plaintiff, who claimed he was still reviewing the letter, instructed defendant not to contact him, and disconnected the call. On April 27, 2017, defendant advised plaintiff that a response must be received by May 8, 2017, or it would assume he "[chose] to retain [the] vehicle" and issue payment of $9089.17 together with "appropriate shop charges/storage through [November 16, 2016] . . . ." [3]

Plaintiff filed his complaint on May 1, 2017, alleging defendant breached the insurance contract and acted in bad faith. In opposing summary judgment, plaintiff furnished an uncertified statement from an individual with expertise in the value of used cars. According to this person, plaintiff's vehicle was worth between $13,500 and $15,000.

---

[3] The record includes an invoice from Jardims' for $12,859.75, reflecting all charges for plaintiff's vehicle from October 28, 2016 through May 10, 2017. Jardims' charged storage fees of $60 per day, which exceeded the rate permitted by Roselle ordinance, §109-11. Although defendant asserts this ordinance violation is relevant to our consideration, it is not clear that defendant objected to the rate or, more importantly, that the issue was ever raised in the Law Division.

There was no oral argument on defendant's motion. As noted, the judge granted summary judgment and ordered defendant to pay "directly to Jardims'" the "costs relating to the storage of plaintiff's vehicle . . . limited to the period of nineteen days from October 28, 2016[] to November 15, 2016, at the contract rate . . . ." There was no oral or written statement of reasons, except, on the order itself, the judge wrote: "Plaintiff has failed to establish a material issue of fact pursuant to Brill[4] and [Rule] 4:46-2. Plaintiff must proceed with his contractual obligations to arbitrate his claim."

After filing his notice of appeal, plaintiff agreed to "move forward with the appraisal process" contained in the policy. Plaintiff's breach of contract claim as to the amount of the loss, therefore, is moot. What remains extant, however, is plaintiff's claim for storage costs and his bad faith claim.

We review the grant of summary judgment de novo, applying the same standard used by the trial judge, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

---

[4] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995).

7

> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins.
> Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R.
> 4:46-2(c)).]

We must decide "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill, 142 N.J. at 540). We owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Plaintiff first argues defendant's motion was untimely because it was not filed with twenty-eight days' notice of the return date, and was not returnable at least thirty days before trial. R. 4:46-1. The argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E).

Rule 4:46-1 excepts motions filed in the Special Civil Part from the twenty-eight day requirement by recognizing Rule 6:3-3 governs. Rule 6:3-3(c)(1) provides any "notice of motion shall not state a time and place for its presentation to the court, nor shall the discovery end date as specified in [Rule]

A-5174-16T3

1:6-2(a) be required."  In other words, "the notice of motion, as a matter of form, does not state a return date."  Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 6:3-3(2018).  Moreover, "[t]he rules in Part VI govern the practice and procedure in the Special Civil Part," <u>Rule</u> 6:1-1, and <u>Rule</u> 4:46 is not among those Rules specifically made applicable to the Special Civil Part.  <u>See</u> <u>R.</u> 6:3-1.  We can say with certainty that the procedural limitations in <u>Rule</u> 4:46 are not required for summary judgment motions filed in the Special Civil Part.

The policy required an insured making a claim under the collision coverage to "[t]ake reasonable steps after loss to protect [the vehicle] . . . from further loss."  Under the policy, defendant agreed to "pay reasonable expenses incurred to do this."

Plaintiff contends there were genuine material facts in dispute as to whether defendant's November 9, 2016 "cut-off letter," limiting the period during which it would pay storage costs, breached the policy of insurance.  Defendant argues its letter conformed to regulatory requirements, specifically, N.J.A.C. 11.2-17.10(a)(9), which states: "An insurer shall provide notice to a claimant three working days prior to the termination of payment for automobile storage charges . . . ."  It is undisputed that defendant gave plaintiff more than three days' notice.

"Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)). "If the terms are not clear, but instead are ambiguous, they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Flomerfelt, 202 N.J. at 441 (citing Doto v. Russo, 140 N.J. 544, 556 (1995) and Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). "A 'genuine ambiguity' arises only 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 274 (2001) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)).

Our courts, and those of several sister jurisdictions, have routinely held that under "duty to protect" clauses in insurance contracts, "any act of the insured in recovering, saving and preserving the property, in case of loss or damage, shall be considered as done for the benefit of all concerned, and all reasonable expenses thus incurred constitute a claim under the policy." State Farm Mut. Auto. Ins. Co. v. Toro, 127 N.J. Super. 223, 227-28 (Law Div. 1974)

10

(emphasis added) (citing <u>Parodi v. Universal Ins. Co.</u>, 128 N.J.L. 433 (Sup. Ct. 1942), and others). Plaintiff argues that defendant's letter provided no alternative safe place for him to store the vehicle without incurring additional fees.

Contrary to defendant's argument, its compliance with the regulation does not entitle it to summary judgment as a matter of law. The regulatory requirement does not translate necessarily into a standard of what is reasonable under the insurance contract. However, under the undisputed facts as presented, no reasonable factfinder could conclude defendant's willingness to pay storage costs from October 28, 2016 to November 16, 2016, was unreasonable, and therefore, a breach of the policy.

The record bears out that plaintiff did not report the accident because he was intent on disputing liability and possibly making a claim under the other driver's policy. Defendant did not know about the accident and the already accruing storage fees, therefore, until November 7, when the other driver contacted defendant. Nevertheless, defendant diligently assessed the damage and conveyed an offer to plaintiff, which he had every right to refuse and did. Defendant also advised plaintiff of its intention to stop paying storage charges, in sufficient time for plaintiff to move his vehicle from Jardims', but he chose

not to do so. There is nothing in the record to support the assertion that plaintiff had no other safe place to store the vehicle, or that it was reasonable for plaintiff to cause weeks of delay while he tried to establish the other driver's fault.

We affirm the order regarding storage costs, but we cannot discern what the judge meant by ordering defendant to pay storage costs at the "contract rate" directly to Jardims'. The policy did not include a per diem rate, and the parties have not suggested what that amount is. In addition, defendant offered to pay storage costs until November 16, 2016, but the order only provided for payment through November 15. We remand the matter to the Law Division to set the amount if the parties cannot otherwise agree.

We also affirm summary judgment on plaintiff's bad faith claims. "[I]t is well-settled that, in New Jersey, 'every insurance contract contains an implied covenant of good faith and fair dealing.'" Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 604 (2015) (alteration in original) (quoting Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011)). "As an extension, 'an insurance company owes a duty of good faith to its insured in processing a first-party claim.'" Ibid. (quoting Pickett v. Lloyd's, 131 N.J. 457, 467 (1993)).

The insurer's bad faith "can be established by showing that no debatable reason existed for the denial of benefits." Taddei v. State Farm Indem. Co., 401

N.J. Super. 449, 460 (App. Div. 2008) (citing Pickett, 131 N.J. at 468-73). "The standard requires that 'a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim.'" Id. at 461 (quoting Pickett, 131 N.J. at 473).

Citing certain regulations and N.J.S.A. 17:29B-4(9), which generally declares certain claim settlement practices unfair and deceptive, plaintiff asserts, "It is not fairly debatable that [d]efendant failed to tender what it believed was the value of [plaintiff's] [v]ehicle." We conclude the record is so one-sided as to compel the opposite conclusion.

Defendant made multiple offers to settle the claim that were all based upon third-party evaluations of the vehicle, which, we reiterate, had more than 269,000 miles on it. The record also bears out that plaintiff initially delayed the processing of the claim by insisting he would obtain an amended police report showing he was not at fault in the accident; after the passage of several weeks, he relented. Plaintiff was also asked to supply documentation regarding the upgrades and refurbishments he made to the vehicle. When he finally supplied this information, defendant's third-party evaluator increased the settlement offer substantially.

In short, no reasonable factfinder could conclude that defendant acted with "knowledge or reckless disregard of the lack of a reasonable basis for denying the claim" or with "reckless . . . indifference to facts or to proofs submitted by the insured." Pickett, 131 N.J. at 473. We affirm the grant of summary judgment to defendant on plaintiff's bad faith claim.

Affirmed. We remand to the Law Division only to clarify the amount of defendant's liability for storage fees. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5174-16T3